335 So.2d 327 (1976)
David K. MacCULLEY et al., Appellants (Defendants),
v.
FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION OF OCALA and Century Federal Savings and Loan Association of Ormond Beach, Appellees (Plaintiffs).
No. Y-197.
District Court of Appeal of Florida, First District.
July 15, 1976.
Rehearing Denied August 11, 1976.
*328 C. Ray Greene, Jr., of Greene, Greene, Smith & Davenport, Jacksonville, for appellants.
Young J. Simmons of Green, Simmons & Green, Ocala, for appellees.
MILLS, Judge.
This is an appeal from a final judgment assessing a deficiency against the defendants under a guarantee agreement in a mortgage foreclosure action.
The defendants contend that the agreement is ambiguous; that all ambiguities should be resolved against the plaintiffs who prepared the agreement; that parol evidence is admissible to explain the ambiguous terms; that the court entered a deficiency in an amount in excess of the limitations set forth in the agreement; and that the court erred in entering a deficiency *329 against them because possession of the mortgaged premises was delivered to plaintiffs prior to the filing of the foreclosure action.
On 13 April 1973, plaintiffs issued a commitment to lend Elm Investments, Inc., $1,040,000.00 to construct a motel. Paragraph 13(d) of the commitment letter provided:
"In addition, if the Borrower is a Corporation, the Association shall require the personal endorsement of the Promissory Note by all principals of the borrowing Corporation and their spouses at the time of the loan closing."
As a result of negotiations between the parties, the following paragraph was substituted for paragraph 13(d):
"You will be required to pay the premium for insuring the mortgage loan with AMI Commercial Insurance Company, this loan commitment being specifically contingent upon your obtaining insurance with AMI or other insurance company acceptable to the Association insuring at least the top twenty per cent (20%) of the amount of the loan, and further, that the principals (David K. MacCulley, Al H. Edwards and Izaac L. Levy) shall personally guarantee the next 10% of the loan on a guarantee form prepared by the Association."
In August the loan was closed and construction was commenced. Elm executed the note and mortgage, and the defendants executed the guarantee agreement. The pertinent parts of the agreement provide:
"1. Guarantors are principals of Elm and this guarantee is made pursuant to paragraph one of Exhibit "B" of commitment issued by Lenders to Elm dated April 13, 1973.
"2. Elm has received the commitment for insurance mentioned in said paragraph from American Mortgage Insurance Company, P.O. Box 27387, Raleigh, North Carolina.
"3. The Guarantors do hereby unconditionally guarantee payment, in the event of default by Elm, of the next 10% of said loan not insured by the American Mortgage Insurance commitment, it being understood that said commitment insures the top 20% of the $1,040,000.00 loan by Lenders to Elm; Guarantors further agree to pay all interest, costs, expenses and reasonable attorneys' fees if necessary to enforce the terms of this guarantee agreement.
"4. Within the limitations expressed in the preceding paragraph, it is the intention of this agreement to make the Guarantors personally liable, not as a surety nor as an endorser, but as a party, directly and primarily liable and Guarantors agree that in event of default by Elm Lenders may immediately and directly pursue any remedy against Guarantors they may have under the laws of the State of Florida.
"5. This guarantee shall continue in full force and effect from the date hereof until the principal balance under said loan shall be reduced to $728,000.00."
At the closing of the loan, the first year's premium on the insurance was deducted. However, the policy was never issued because Elm failed and refused to furnish the motel for operation which was a requirement for the issuance of the policy.
On 24 May 1974, Elm surrendered possession of the mortgaged premises to plaintiffs. On 17 June, plaintiffs commenced foreclosure proceedings against Elm as mortgagor, and the defendants as guarantors. As defenses, defendants alleged that the agreement was invalid because the insurance policy was never issued, and that plaintiffs abandoned any other remedy by repossessing the mortgaged premises.
*330 Final judgment of foreclosure was entered for plaintiffs. Plaintiffs were the sole bidders at the sale with a bid of $700,000.00.
There were no objections to the sale and a certificate of sale was issued vesting title in plaintiffs.
Plaintiffs then moved the court for assessment of a deficiency judgment against the defendants. The court assessed a deficiency judgment against the defendants and that led to this appeal.
The agreement is not ambiguous. The loss commitment provided that if the borrower (Elm) was a corporation (it was), all principals of the corporation (defendants) and their spouses must personally endorse the note at the loan closing. Pursuant to negotiations, and in order to relieve the defendants and their spouses from this obligation, it was agreed that Elm would obtain insurance to insure the payment of the top twenty percent of the loan, and in the event of a default by Elm, the defendants unconditionally guaranteed payment of the next ten percent of the loan. It was further agreed that the guarantee was to continue in force until the loan was reduced to $728,000.00. Defendants pose the question, "What is meant by these terms?" They mean just what they say. It is clear that the top twenty percent of the loan, which was $1,040,000.00 is $208,000.00, and that the next ten percent of the loan is $104,000.00. This is borne out by the provision that the guarantee was to continue until the loan was reduced to $728,000.00. If the $208,000.00 and $104,000.00 payments had been made, the loan would have been reduced to $728,000.00. Elm defaulted and did not make the $208,000.00 payment. Nor did it insure this payment as agreed. Because of the defaults of Elm, the defendants, as guarantors, became responsible under the agreement. There being no ambiguous terms in the agreement, parol evidence was not admissible.
The final judgment of foreclosure provided that Elm owed plaintiffs the sum of $1,147,538.87, which included $1,038,461.29 principal, $71,106.62 interest as of 9 December 1974, $7,970.96 costs, and $30,000.00 attorneys' fees. At the foreclosure sale, the property sold for $700,000.00. Sale costs amounted to $2,891.00. Plaintiffs moved the court to assess a deficiency of $345,128.96 against the defendants which was thirty percent of the judgment of $1,147,538.87 plus costs of $2,891.00. By its judgment, the court found the deficiency to be $345,128.96.
Defendants contend that under paragraph 5 of the agreement they owe no deficiency, because after deducting the $700,000.00 sale price from the amount of the foreclosure judgment, the guarantee is no longer effective, because the principal amount of the loan would be under $728,000.00. In the alternative, defendants contend that under paragraph 3 of the agreement the deficiency entered against them should be no more than ten percent of $1,040,000.00 or $104,000.00, or no more than ten percent of $832,000.00 (sum remaining after deducting twenty percent from principal amount of loan) or $83,200.00.
The contention that the court erred in entering a deficiency is without merit. The defendants never reduced the principal balance of the loan to $728,000.00. The principal balance of the loan was not reduced until the property was sold at the foreclosure sale.
We agree, however, that under paragraph 3 of the agreement, the deficiency entered against defendants should be no more than 10% of $1,040,000.00 plus interest, costs, expenses and reasonable attorney's fees necessary to enforce the terms of the agreement. The terms of paragraph 3 are crystal clear. Elm Corporation was responsible for obtaining insurance for the top 20% of the amount of the loan while defendants, as guarantors, obligated *331 themselves for the next 10%. Paragraph 3 of the guaranty agreement closely tracks the language found in substituted paragraph 13(d) of the loan commitment letter. Had the parties contemplated that defendants be personally liable for the top 30% of the loan, they could have expressly so provided. Therefore, the trial court erred in assessing a deficiency against defendants which totaled 30% of the judgment plus costs. The deficiency should be reduced, according to the terms of paragraph 3 of the guaranty agreement.
Finally, although Elm returned the mortgaged premises to plaintiffs after its default, and prior to the filing of the foreclosure action, this did not preclude the entry of the deficiency judgment. Not only was this a voluntary act by Elm, but the defendants, principals of Elm, should not be permitted to take advantage of the wrongs committed by Elm.
Affirmed in part; reversed in part, with directions.
SACK, MARTIN, Associate Judge, concurs.
BOYER, C.J., dissents.
BOYER, Chief Judge (dissenting).
The record clearly reflects that all parties were sophisticated in business affairs. It is also clear that the lending banks intended to make the loan which gave rise to the mortgage here involved to the corporation (Elm) and not to the individuals. All obligations, liabilities and responsibilities, except those created by the personal guaranty, are those of the corporations involved. The individuals (being the individual appellants in this case) have no responsibilities, liabilities nor obligations except those specifically provided in the personal guaranty. Indeed, appellees do not contend nor argue otherwise. The individuals did not, in their individual capacities, agree nor undertake to obtain mortgage insurance insuring the payment of any portion of Elm's indebtedness to appellees. Only Elm agreed to procure such insurance and its default in that regard in no manner altered the obligations of the individuals. The sole obligation of the individuals was a conditional guaranty to pay 10% of Elm's indebtedness to appellees. Even that obligation was limited by the terms of the written guaranty. The "corporate veil" was not pierced. There was no attempt to pierce it. The corporation is a distinct entity apart and separate from its principals. I therefore concur that the maximum amount for which the individual appellants could have been held responsible, under any circumstances, was 10% of the corporate obligation to appellees.
However, as above noted, the individuals' obligation to pay any amount was limited by the last paragraph of the written guaranty agreement. That paragraph provides as follows:
"This guarantee shall continue in full force and effect from the date hereof until the principal balance under said loan shall be reduced to $728,000."
It will be noted that the above quoted paragraph does not require that the principal balance be reduced by appellants, nor is there any requirement that it be reduced in any particular manner.
The final judgment of foreclosure found the total amount of the indebtedness owed to appellees to be in the sum of $1,147,538.87. Pursuant to that final judgment the mortgaged property was sold to the highest and best bidder for the sum of $700,000. It makes no difference that the appellees were the highest and best bidders and therefore the purchasers at the foreclosure sale. As a result of the foreclosure the amount owed on the loan was reduced to something in excess of $300,000, which sum is substantially under the $728,000 recited in the above quoted provision in the written guaranty agreement. It was after the foreclosure sale and after the application of the proceeds from the foreclosure sale that the deficiency judgment giving *332 rise to the appeal sub judice was entered. At that time, as above observed, the balance of Elm's obligation to appellees "the principal balance under said loan" had been reduced to a sum substantially less than $728,000.
The record reveals that the written instrument was the work product of appellees. Had it been appellees' intention to release the individuals from any obligation pursuant to the guaranty agreement only after appellees had been paid a sum sufficient to reduce the obligation to $728,000 it would have been a simple matter to have so stated. The agreement makes no mention of payment. Appellees now urge however that such was the intention of the parties. If such be true then clearly the written agreement is ambiguous and parol evidence should have been admitted to explain the intention of the parties. Appellees are impaled on the horns of a dilemma. If the written guaranty means what it says then the individual appellants' obligations thereunder ceased when the balance was reduced to a figure below $728,000. If the agreement does not mean what it says and if such was not the intention of the parties, then parol evidence should have been admitted in an attempt to explain the patent ambiguity. In my view, the guaranty is ambiguous. An ambiguous writing is one which is subject to different interpretations by two disinterested and reasonable persons. Judge Mills and I are both disinterested and are both reasonable. We interpret the instrument differently. A fortiori it is ambiguous.
Regardless upon which horn of the dilemma appellee seeks to repose, in my view reversal is required.