MILLS, Judge.
This is an appeal from a final judgment assessing a deficiency against the defendants under a guarantee agreement in a mortgage foreclosure action.
The defendants contend that the agreement is ambiguous; that all ambiguities should be resolved against the plaintiffs who prepared the agreement; that parol evidence is admissible to explain the ambiguous terms; that the court entered a deficiency in an amount in excess of the limitations set forth in the agreement; and that the court erred in entering a deficien *329 cy against them because possession of the mortgaged premises was delivered to plaintiffs prior to the filing of the foreclosure action.
On 13 April 1973, plaintiffs issued a commitment to lend Elm Investments, Inc., $1,040,000.00 to construct a motel. Paragraph 13(d) of the commitment letter provided :
“In addition, if the Borrower is a Corporation, the Association shall require the personal endorsement of the Promissory Note by all principals of the borrowing Corporation and their spouses at the time of the loan closing.”
As a result of negotiations between the parties, the following paragraph was substituted for paragraph 13(d):
“You will be required to pay the premium for insuring the mortgage loan with AMI Commercial Insurance Company, this loan commitment being specifically contingent upon your obtaining insurance with AMI or other insurance company acceptable to the Association insuring at least the top twenty per cent (20%) of the amount of the loan, and further, that the principals (David K. MacCulley, A1 H. Edwards and Izaac L. Levy) shall personally guarantee the next 10% of the loan on a guarantee form prepared by the Association.”
In August the loan was closed and construction was commenced. Elm executed the note and mortgage, and the defendants executed the guarantee agreement. The pertinent parts of the agreement provide:
“1. Guarantors are principals of Elm and this guarantee is made pursuant to paragraph one of Exhibit “B” of commitment issued by Lenders to Elm dated April 13,1973.
“2. Elm has received the commitment for insurance mentioned in said paragraph from American Mortgage Insur-anee Company, P.O. Box 27387, Raleigh, North Carolina.
“3. The Guarantors do hereby unconditionally guarantee payment, in the event of default by Elm, of the next 10% of said loan not insured by the American Mortgage Insurance commitment, it being understood that said commitment insures the top 20% of the $1,040,000.00 loan by Lenders to Elm; Guarantors further agree to pay all interest, costs, expenses and reasonable attorneys’ fees if necessary to enforce the terms of this guarantee agreement.
“4. Within the limitations expressed in the preceding paragraph, it is the intention of this agreement to make the Guarantors personally liable, not as a surety nor as an endorser, but as a party, directly and primarily liable and Guarantors agree that in event of default by Elm Lenders may immediately and directly pursue any remedy against Guarantors they may have under the laws of the State of Florida.
“5. This guarantee shall continue in full force and effect from the date hereof until the principal balance under said loan shall be reduced to $728,000.00.”
At the closing of the loan, the first year’s premium on the insurance was deducted. However, the policy was never issued because Elm failed and refused to furnish the motel for operation which was a requirement for the issuance of the policy.
On 24 May 1974, Elm surrendered possession of the mortgaged premises to plaintiffs. On 17 June, plaintiffs commenced foreclosure proceedings against Elm as mortgagor, and the defendants as guarantors. As defenses, defendants alleged that the agreement was invalid because the insurance policy was never issued, and that plaintiffs abandoned any other remedy by repossessing the mortgaged premises.
*330 Final judgment of foreclosure was entered for plaintiffs. Plaintiffs were the sole bidders at the sale with a bid of $700,000.00.
There were no objections to the sale and a certificate of sale was issued vesting title in plaintiffs.
Plaintiffs then moved the court for assessment of a deficiency judgment against the defendants. The court assessed a deficiency judgment against the defendants and that led to this appeal.
The agreement is not ambiguous. The loss commitment provided that if the borrower (Elm) was a corporation (it was), all principals of the corporation (defendants) and their spouses must personally endorse the note at the loan closing. Pursuant to negotiations, and in order to relieve the defendants and their spouses from this obligation, it was agreed that Elm would obtain insurance to insure the payment of the top twenty percent of the loan, and in the event of a default by Elm, the defendants unconditionally guaranteed payment of the next ten percent of the loan. It was further agreed that the guarantee was to continue in force until the loan was reduced to $728,000.00. Defendants pose the question, “What is meant by these terms?” They mean just what they say. It is clear that the top twenty percent of the loan, which was $1,040,000.00 is $208,000.00, and that the next ten percent of the loan is $104,000.00. This is borne out by the provision that the guarantee was to continue until the loan was reduced to $728,000.00. If the $208,000.00 and $104,000.00 payments had been made, the loan would have been reduced to $728,000.-00. Elm defaulted and did not make the $208,000.00 payment. Nor did it insure this payment as agreed. Because of the defaults of Elm, the defendants, as guarantors, became responsible under the agreement. There being no ambiguous terms in the agreement, parol evidence was not admissible.
The final judgment of foreclosure provided that Elm owed plaintiffs the sum of $1,147,538.87, which included $1,038,461.29 principal, $71,106.62 interest as of 9 December 1974, $7,970.96 costs, and $30,000.00 attorneys’ fees. At the foreclosure sale, the property sold for $700,000.00. Sale costs amounted to $2,891.00. Plaintiffs moved the court to assess a deficiency of $345,128.96 against the defendants which was thirty percent of the judgment of $1,147,538.87 plus costs of $2,891.00. By its judgment, the court found the deficiency to be $345,128.96.
Defendants contend that under paragraph 5 of the agreement they owe no deficiency, because after deducting the $700,000.00 sale price from the amount of the foreclosure judgment, the guarantee is no longer effective, because the principal amount of the loan would be under $728,000.00. In the alternative, defendants contend that under paragraph 3 of the agreement the deficiency entered against them should be no more than ten percent of $1,040,000.00 or $104,000.00, or no more than ten percent of $832,000.00 (sum remaining after deducting twenty percent from principal amount of loan) or $83,200.00.
The contention that the court erred in entering a deficiency is without merit. The defendants never reduced the principal balance of the loan to $728,000.00. The principal balance of the loan was not reduced until the property was sold at the foreclosure sale.
We agree, however, that under paragraph 3 of the agreement, the deficiency entered against defendants should-be no more than 10% of $1,040,000.00 plus interest, costs, expenses and reasonable attorney’s fees necessary to enforce the terms of the agreement. The terms of paragraph 3 are crystal clear. Elm Corporation was responsible for obtaining insurance for the top 20% of the amount of the loan while defendants, as guarantors, obli *331 gated themselves for the next 10%. Paragraph 3 of the guaranty agreement closely tracks the language found in substituted paragraph 13(d) of the loan commitment letter. Had the parties contemplated that defendants be personally liable for the top 30% of the loan, they could have expressly so provided. Therefore, the trial court erred in assessing a deficiency against defendants which totaled 30% of the judgment plus costs. The deficiency should be reduced, according to the terms of paragraph 3 of the guaranty agreement.
Finally, although Elm returned the mortgaged premises to plaintiffs after its default, and prior to the filing of the foreclosure action, this did not preclude the entry of the deficiency judgment. Not only was this a voluntary act by Elm, but the defendants, principals of Elm, should not be permitted to take advantage of the wrongs committed by Elm.
Affirmed in part; reversed in part, with directions.
SACK, MARTIN, Associate Judge, concurs.
BOYER, C. J., dissents.