MILLS, Judge.
Myers appeals from a final judgment of foreclosure. We affirm.
On 23 October 1978, Myers sold all the capital stock of Seminole Distributors, Inc. (Seminole) to David and Mary McNamara (the McNamaras). As part of the transaction, Seminole executed a promissory note to the Lewis State Bank (LSB) for $210,-000, and the McNamaras each executed personal guaranties to LSB for $210,000. As further security for the $210,000, the McNamara’s and Myers executed and delivered a mortgage to LSB. The mortgage covered property owned by Myers and property owned by the McNamaras.
On 26 October 1978, Seminole applied to LSB for a letter of credit in favor of E.J. Gallo Winery (Gallo). LSB agreed and, together with Seminole, applied to First National Bank of Florida (FNB) for an irrevocable letter of credit in favor of Gallo for $30,000. FNB issued a “Clean Irrevocable Letter of Credit” as requested.
As security for the letter of credit, Seminole executed another promissory note to LSB for $30,000 “given to secure sums advanced pursuant to terms of irrevocable letter of credit.” As further security for the letter of credit, Myers executed and delivered another mortgage to LSB. LSB held security interests in Seminole’s inventory, accounts receivable, and fixtures.
By 9 June 1979, Seminole had decided to go out of business and made a bulk sale of its wine inventory to Jax Liquors. LSB found out about this transaction and, because it had a security interest in invento *532 ry, attempted to intercept Jax’s payment to Seminole for the wine. LSB negotiated with Jax and Seminole in this regard, and sometime before 5 July 1979, LSB received a check for part of the proceeds. The remainder went for payment of alcoholic beverage excise taxes and other administrative expenses.
At the time LSB received the check, the letter of credit in favor of Gallo had not been funded, i.e., Gallo had not attempted to draft against it. On 12 July 1979, Gallo drew on the letter of credit for $23,414.94. Earlier, on 13 June 1979, LSB sent a notice of default to Seminole declaring the $210,-000 note in default.
LSB filed a six-count complaint with the trial court against Seminole, the McNamar-as, and Myers as follows: Count I — action on $210,000 note; Count II — action to foreclose mortgage on the McNamaras’ property securing the $210,000 note; Count III— action to foreclose mortgage on Myers’ property securing the $210,000 note; Count IV — action on $30,000 note; Count V — action to foreclose mortgage on Myers’ property securing the $30,000 note; Count VI— action for declaratory relief to determine proper allocation of proceeds from Seminole’s inventory sale to Jax Liquors.
Following a final hearing, the trial court issued a final judgment of foreclosure. Myers appeals from this judgment.
Myers contends the trial court erred in ruling that all proceeds derived from the sale of Seminole’s assets are to be applied by LSB to reduce the $210,000 note. He argues the proceeds should be applied first to pay off the $30,000 note thereby satisfying Myers’ mortgage securing the Gallo letter of credit. The trial court rejected this contention based on its finding that the $30,000 indebtedness had not been incurred at the time LSB received the proceeds.
Myers does not dispute this finding, but argues it is irrelevant because LSB held the proceeds -in a separate account pending the trial court’s decision. Even so, the fact remains that the assets from which the proceeds were derived were, according to the terms of the $210,000 note, collateral for that note and therefore properly applied to reduce that debt. We fail to see how the $210,000 note could be subordinate to the debt evidenced by the $30,000 note since the $30,000 note was given to secure sums advanced pursuant to the Gallo letter of credit and no sums had been so advanced when Seminole defaulted on the $210,000 note or when LSB received the proceeds in question.
Myers also contends the trial court erred in determining the nature of his obligation under the mortgage securing the $210,000 note. That mortgage contains the following:
13. SPECIAL PROVISIONS:
a. It is specifically agreed between the parties that Mortgagor Bernard Montgomery Myers, shall have no liability as and relating to that Promissory Note, a copy of which is attached hereto as Exhibit “A”, and that in the event of a default under said Promissory note by the Makers, Mortgagee’s sole recourse against Mortgagee, Bernard Montgomery Myers, under this Mortgage shall be to foreclosure of the lien of this Mortgage.
b. Tract I described in this Mortgage shall be released by Mortgagee from the lien of this Mortgage when the principal amount of the Promissory Note, a copy of which is attached hereto as Exhibit “A”, is reduced by $60,000.00.
Under the terms of special provision 13(b), the partial release provision, Myers argues he is entitled to have the proceeds from all other collateral applied first to reduce the principal amount owed on the $210,000 promissory note by $60,000, thereby extinguishing his obligation under the mortgage securing the $210,000 note. But the trial court found the partial release provision could only operate to release Myers’ property if the principal had been reduced by $60,000 in the usual course of business and not by proceeds received from liquidation after default. We agree with the trial court.
*533 In MacCulley v. Fidelity Federal Savings and Loan Association of Ocala, 335 So.2d 327 (Fla. 1st DCA 1976), a clause in a guaranty agreement executed in connection with a promissory note and mortgage provided:
This guarantee shall continue in full force and effect from the date hereof until the principal balance under said loan shall be reduced to $728,000.
The mortgage was foreclosed, the property sold, and a deficiency judgment entered against the guarantors. On appeal, the guarantors contended they owed no deficiency because, after deducting the $700,-000 sale price from the amount of the foreclosure judgment, the guaranty was no longer effective inasmuch as the amount of the loan would be under $728,000. The court responded:
The contention that the court erred in entering a deficiency is without merit. The defendants never reduced the principal balance of the loan to $728,000. The principal balance of the loan was not reduced until the property was sold at the foreclosure sale.
335 So.2d at 330.
Myers’ attempts to distinguish MacCul-ley by arguing that unlike the guarantors in that case, Myers did not unconditionally and personally guaranty a specific amount, but only mortgaged his property as conditional collateral. In the final judgment, however, the trial court found all collateral to be primary collateral. The $210,000 note stated on its face that it was secured by Myers’ mortgage, among other things.
Neither do the provisions of the mortgage securing the $210,000 note indicate Myers’ property is to be conditional collateral. Myers therefore argues that the special provisions of the mortgage are ambiguous and that the parol evidence presented to the trial court showed the parties’ intention that Myers’ property be only conditional collateral. Yet the trial court specifically found that all agreements merged into the closing documents. Here, as in Mac-Culley, the mortgage provisions were not ambiguous and parol evidence is irrelevant.
MacCulley is but an example of the proposition that, absent evidence to the contrary, a provision providing for release of security for a principal debt when the principal debt is reduced by a certain amount operates only when the reduction occurs in the ordinary course of business prior to default. See also, Connelly v. Central States Pension Fund, 315 F.2d 683 (5th Cir.1963); Widmann v. Hammack, 110 Wash. 77, 187 P. 1091 (1920).
Myers contends the trial court erred in failing to credit him with more than $6,000 based on LSB’s failure to collect or its disbursal of collateral proceeds to Myers’ detriment. Specifically, he contends LSB failed to exercise due diligence in obtaining a reasonable amount of money from the sale of Seminole’s fixed assets and in failing to perfect a security interest in Seminole’s motor vehicles.
But based on the evidence presented, the trial court could find LSB obtained a reasonable price for the fixed assets. Also, there was testimony that Seminole’s motor vehicles were never pledged to LSB as security but were, in fact, pledged as security on loans to another bank. To say the trial court erred in this regard would be to second guess the factfinder, and that is not our function.
Finally, Myers contends the trial court erred in failing to credit him for the amount paid the Department of Business Regulation for alcoholic beverage excise taxes due on Seminole’s sale of wine inventory to Jax Liquors. The taxes were paid from the wine inventory proceeds.
Myers does not argue that the alcoholic beverage excise taxes were not legally due. He argues that LSB was not obligated to let Seminole pay the taxes from the inventory proceeds. Assuming LSB did have an obligation to exercise due diligence to protect the proceeds for Myers’ benefit, the trial court implicitly found such diligence was exercised when it found the tax payments reasonable. Without evidence that LSB could have recovered all the proceeds *534 without allowing the taxes to be paid, we cannot say the trial court erred.
AFFIRMED.
ERVIN, C.J., and ZEHMER, J., concur.